IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JAMES FERGUSON                                                   PLAINTIFF

VS.                                                 CIVIL ACTION NO.: 3:16-CV-237-CWR-FKB

T. MORGAN, J. WILLIAMS,
UNKNOWN RUFFIN, R. PENNINGTON,
AND UNKNOWN SHAW                               DEFENDANTS

## REPORT AND RECOMMENDATION

James Ferguson, a state prisoner, filed this *pro se* action on April 4, 2016 against several employees at East Mississippi Correctional Facility ("EMCF") and an employee of the Mississippi Department of Corrections ("MDOC"), pursuant to 42 U.S.C § 1983. Before the Court are a summary judgment motion, [31], filed by the employees at EMCF, a summary judgment motion, [33], filed by Plaintiff, and a summary judgment motion, [39], filed by the MDOC employee. For the reasons described herein, the undersigned recommends that the motions filed by the employees at EMCF and the MDOC employee, [31] and [39], be granted. The undersigned further recommends that the motion filed by Plaintiff, [33], be denied.

**Factual Allegations**

Ferguson's suit names as defendants the following employees at EMCF: Defendants Tonya Morgan, unit manager; Jackie Williams, corrections officer; Lemarcus Ruffin, investigator, and Frank Shaw, Warden of EMCF ("EMCF Defendants"). Ferguson also names MDOC Defendant Richard Pennington, director of MDOC's Administrative Remedy Program. He alleges generally that, "the above Defendants knowingly, purposely, and deliberately violated Plaintiff's Fourteenth and Eighth [Amendment] Constitutional Rights." [1] at 2. Ferguson further alleges that Defendants

"denied [him] due process of law, equal protection of law, and [their actions constituted] cruel and unusual punishment." *Id.*

The majority of Ferguson's Complaint and subsequent filings focus on Defendants' actions following his assault by two other inmates on May 5, 2015. He claims the inmates struck him on the back of his head with a cafeteria tray. *Id.* at 3. Following the assault, Ferguson requested to be put in protective custody and not to be housed in the same unit, Unit 3C, as those two inmates. *Id.* He claims that he followed prison procedure – submitting a "red tag" on the two prisoners – as required when a prisoner fears that his life may be in danger from another prisoner. *Id.* at 3-4. Ferguson alleges that after he submitted his request, prison officials reassigned him to administrative segregation, placing him on lock-down for four months. *Id.* at 3. He complains that during this time, he did not speak with a prison investigator, presumably about the May 2015 assault. *Id.* In approximately September 2015, prison officials reassigned Ferguson to Unit 3A. *Id.* at 3-4.

According to Ferguson, on December 30, 2015, Defendant Williams informed him that he was being reassigned from Unit 3A to Unit 3C. *Id.* at 4. Ferguson responded that he could not be moved back to Unit 3C because one of the inmates involved in the May 2015 assault still resided there. *Id.* Ferguson claims that Williams responded by telling him that there was no red tag on file which would prevent Ferguson's transfer to Unit 3C. *Id.* Ferguson then claims that a prison official, Lt. Vesk, handcuffed him, and moved him from Unit 3A to Unit 3C. *Id*. Ferguson states that Lt. Vesk claimed that he was following orders from Defendant Morgan, the unit manager. *Id.* at 5.

Ferguson spent the night of December 30, 2015, in a cell located in Unit 3C.[1] *Id.* Ferguson states that the next morning, he went to Morgan's office with a copy of an incident report "to remind Ms. Morgan what had happen[ed]" in May 2015. *Id.* Ferguson claims that Morgan called in Capt. Dykyes, who "grab[bed] plaintiff, slam[med] him into the wall, [and] placed handcuffs on [him]." *Id.* He claims that Morgan then told Williams to take him to the medical unit, then to lock-down. *Id.* He alleges that as a result of the incident, he received a notice of disciplinary action informing him that he was being cited for threatening staff. *Id.* Ferguson complains that prison officials failed to give him his property for four days, and that during that time, he had to sleep without a blanket, eat with his hands, and was given no toilet paper. *Id.*

Ferguson claims he never received a copy of the Rules Violation Report "RVR" relating to the December 2015 incident with Morgan. *Id.* He claims that he requested a witness at his hearing, but that the hearing officer stated that he had not requested a witness on his RVR form. *Id.* at 6. Ferguson responded that he could not, because he was never given a copy. *Id.* At the hearing, Ferguson claimed that he never threatened Morgan, but had attempted to explain that one of the inmates who had assaulted him was still housed in Unit 3C. *Id.* The hearing officer found him guilty and recommended custody review. *Id.* Ferguson unsuccessfully appealed the decision. *Id.*

Ferguson spent six weeks in segregation following the hearing. *Id.* He wrote to Defendant Ruffin, asking to be transferred to a protective custody facility. *Id.* When Ruffin had Ferguson transferred to Unit 3A, Ferguson wrote him that he did not feel safe in that unit due to the presence

---

[1] From Defendant's Complaint and subsequent filings, December 30, 2015, appears to be the only night during which Ferguson was assigned to Unit 3C following the May 2015 assault. *See, generally,* [1], [10]. Ferguson appears to corroborate this fact in his motion for summary judgment. [33] at 3.

of gang members.[2] *Id*. at 6-7. Ferguson alleges that he filed an administrative request to be placed in protective custody "for his safety and [to] avoid these traps set up by staff." *Id.* He stated that the request was rejected, and claimed the director of the ARP, presumably Defendant Pennington, said it was untimely as "more than fifteen (30) [sic] days [had passed] between the event [December 2015] and initial request [March 2016]." *Id.* Ferguson claims that he submitted his first request relating to the December 2015 incident in January 2016. *Id.*

Since filing his original Complaint, Ferguson has continued to file additional documents containing new factual allegations. On May 19, 2016, he filed a Motion for a Temporary Restraining Order and Preliminary Injunction. [9]. In the motion, Ferguson alleges that on May 2, 2016, a gang member verbally threatened him, saying "it didn't matter how old [Ferguson] was, [the gang member] had something for [him]." *Id.* at 2. Ferguson alleged generally that the guards cooperated with gang members, using the gang members to do favors for them. *Id.* at 3-4.[3]

Prior to the suit being served on Defendants, Plaintiff filed an Amended Complaint. [10]. The Amended Complaint restated many of the allegations found in the original Complaint, with virtually all of them relating to the May 2015 assault, his reassignment to Unit 3C in December 2015, and his contention that he did not threaten Defendant Morgan when he visited her office on December 31, 2015.[4] *Id.* at 4-7.

---

[2] Ferguson's Complaint does not give a clear indication of when this occurred. However, based on the grievance files provided by the EMCF Defendants as part of their motion [31], it appears he was transferred from Unit 5B to Unit 3A on or about February 4, 2016. *See* [31-1] at 3.
[3] Ferguson's Motion for a Temporary Restraining Order and Preliminary Injunction was denied as moot on February 6, 2017, as Ferguson had been transferred to a different facility in November 2016.
[4] In a motion filed October 28, 2016, Ferguson alleged that in May 2016, guards allowed a prisoner to throw a two-pint milk carton full of bodily fluid in his face. *See* [20] at 5-6. In another document filed by Ferguson at the omnibus hearing, he claimed that the incident occurred on May 28, 2016, between 11am and 12pm. [36]. He claims he submitted a grievance about that incident three months before the October 2016 filing. [20] at 6; [36] at 2. He also alleged that the day after the EMCF Defendants' counsel entered their appearance in this case, he was transferred from housing unit 5A to 5B, which he claims is more hostile. [20] at 7. He further alleged that the move

On November 14, 2016, Plaintiff submitted to the Court a Notice of Address Change, stating that he had been moved from EMCF to the Wilkinson County Correctional Facility ("WCCF"). [29].

**Motions for Summary Judgment**

The EMCF Defendants filed a motion for summary judgment on November 18, 2016. [31]. In their motion, they argue that the Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust any available administrative remedies prior to filing suit, and that Ferguson has failed to do so with regard to most of his claims. [32] at 4-6. The EMCF Defendants cite 42 U.S.C. § 1997e(a) to support their position. *Id.* They attach the affidavit of Mary Dempsey, the Administrative Remedy Program ("ARP") Coordinator at EMCF. [31-2], in which she details the administrative remedies available to Ferguson, each of the grievances Ferguson submitted during the relevant time frame, and the results of each. *Id.* She attaches to her affidavit the records related to each grievance Ferguson has filed. *Id.* Dempsey states that she has no record of Ferguson having filed a grievance relating to the May 2015 assault. *Id.* at ¶ 11. Between August 28, 2015, and April 26, 2016, she has a record of six different grievances filed by Ferguson. *Id.* at ¶¶ 5-10. Dempsey describes each of the grievances in her affidavit as follows:

> On August 28, 2015, Ferguson submitted a grievance complaining that he had been housed in segregation pending investigation for four months, but that he had never spoken with an investigator and wanted to be transferred to another facility. The complete file for this grievance, labeled EMCF-15-1879, is attached hereto as Exhibit "1." Ferguson voluntarily withdrew this grievance on September 3, 2015 before receiving a first step response, and he did not complete the ARP process.

---

was retaliatory and that prison officials were conspiring with gangs to have him assaulted. *Id.* This incident occurred after Plaintiff filed this case and is the subject of another suit before this Court, *Ferguson v. Ellis, et al,* 3:17-cv-00165-DPJ-FKB. The undersigned will not, therefore, address this claim in this Report and Recommendation.

On January 6, 2016, Ferguson submitted a grievance complaining that on the same date Sgt. Pullium had used abusive and threatening language toward him while being escorted to the shower on Unit 5, and he requested protective custody due to Sgt. Pullium's threatening behavior. The complete file for this grievance, labeled EMCF-16-283, is attached hereto as Exhibit "2." Sgt. Ruffin completed a first step response on February 17, 2016, noting that Ferguson had been moved to Unit 3. Warden Hogans completed a second step response on February 24, 2016, noting that Ferguson had been moved to Unit 3 and was no longer housed around Sgt. Pullium, completing the ARP process for this grievance.

On January 20, 2016, Ferguson submitted a grievance appealing his conviction on RVR No. 01653983 for using vulgar and threatening language toward staff. The complete file for this grievance, labeled EMCF-16-196, is attached hereto as Exhibit "3." Warden Shaw completed a first step response on January 29, 2016, denying Ferguson's appeal and completing the ARP process.

On March 5, 2016, Ferguson submitted a grievance complaining that on December 31, 2015, Sgt. Williams and Unit Manager Morgan had moved him from Unit 3-A to Unit 3-C, where he had previously been assaulted by offender Curtis Glenn, and he requested to be transferred to a facility where he could be placed on protective custody. The complete file for this grievance, labeled EMCF-16-368, is attached hereto as Exhibit "4." This grievance was rejected because it was submitted more than 30 days after the complained-of incident, as required by MDOC ARP guidelines.

On April 23, 2016, Ferguson submitted a grievance complaining that he should have been placed on protective custody due to prior threats made by Sgt. Pullium while he was housed on Unit 5, and that he had now been moved back to Unit 5 and again feared for his safety. The complete file for this grievance, labeled EMCF-16-921, is attached hereto as Exhibit "5." Sgt. Ruffin completed a first step response on June 17, 2016, noting that when staff had tried to move Ferguson back to Unit 3, he had refused, and further noting that Ferguson had not provided sufficient details regarding his request for protective custody. Ferguson did not appeal to the second step, and he did not complete the ARP process for this grievance.

On April 26; 2016, Ferguson submitted a grievance complaining that he is a B-custody offender and that he is eligible for transfer to another facility. The complete file for this grievance, labeled EMCF-16-1004, is attached hereto as Exhibit "6." Ms. Odom completed a first step response on June 29, 2016, noting that a transfer request had been submitted to MDOC and that they were waiting on a decision. Ferguson did not appeal to the second step, and he did not complete the ARP process for this grievance.

*Id.* A review of the attached documentation supports the EMCF Defendants' position that Ferguson completed the administrative remedy procedure with regard to only two of the six grievances. Specifically, he completed the process as it concerns only the January 6, 2016, grievance relating to his fears of Sgt. Pullium, and the January 20, 2016, grievance related to the RVR conviction. *See Id.* at ¶¶ 6,7.

The EMCF Defendants further argue that Plaintiff cannot establish a constitutional claim regarding his RVR conviction. They contend that Ferguson has no constitutional rights to facility privileges, no protected interest in his security classification, cannot establish a due process violation, and is barred from recovering money damages as a result of the *Heck* doctrine.[5]

Ferguson filed a motion for summary judgment on December 12, 2016. [33]. Ferguson's motion contains no allegations or argument not previously contained within his earlier filings. Ferguson attaches as an exhibit a document which describes the May 2015 assault, but nothing that would establish that he exhausted his available administrative remedies with regard to his "failure to protect" claims stemming from the alleged actions of Defendants after that assault. *See id*. Further, he presents no argument or factual information which would demonstrate that his RVR conviction gives rise to a § 1983 claim. *Id.* Ferguson moves the Court to "review the facts and information and to determine if defendant did violate offender's right to reasonable safety, and to grant plaintiff a judgment for damages." *Id.* at 4.

The Court held an omnibus hearing on January 18, 2017. The Court, after considering Ferguson's testimony at the hearing and Ferguson's filings to date, issued an Omnibus Order on

---

[5] *Heck v. Humphrey*, 512 U.S. 477, 487-88 (1994).

7

January 19, 2017. [37]. As a result of the hearing, the Court determined Ferguson's claims to be as follows:

> Plaintiff alleges that the Defendants failed to satisfy their duty to protect Plaintiff when they moved Plaintiff back to a particular housing unit after Plaintiff had previously been attacked by other inmates in that unit.

*Id.*

On January 25, 2017, Defendant Pennington filed a motion for summary judgment based on sovereign and qualified immunity. [39]. Pennington asserts that he is an employee of the State of Mississippi. [40] at 3-4. He contends that to the extent there are any allegations against him in the Complaint, they are against him in his role as the Director of the Administrative Remedy Program. *Id.* at 4-5. Consequently, Pennington argues that he is entitled to sovereign immunity insofar as the allegations are against him in his official capacity, and qualified immunity to the extent the allegations are against him in his personal capacity. *Id.* at 5-6.

**Discussion**

42 U.S.C. § 1997e(a) states that, "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." In order to exhaust all administrative remedies, an inmate must utilize all available avenues to appeal an administrative decision and must file any grievances within the timeframe set by the administrative agency. *See, e.g., Woodford v. Ngo,* 548 U.S. 81 (2006); *Gordon v. Yusuff*, 102 Fed. Appx. 415 (5th Cir. 2004). The Mississippi Department of Corrections requires inmates file any grievances they may have within 30-days of the incident. [31-2] at ¶ 8; *see also, Tillis v. Mgmt. & Training Corp.*, No. 3:14CV237-LRA, 2016 U.S. Dist. LEXIS 29573, at *7 (S.D. Miss.

Mar. 7, 2016). Thus, Ferguson may only pursue claims for which he exhausted the administrative remedy process prior to filing suit.

Ferguson exhausted his available administrative remedies with regard to two claims: (1) his January 6, 2016, grievance against Pullium, and (2) his January 20, 2016, grievance relating to his RVR conviction. Ferguson's grievance against Pullium is irrelevant to this suit, as Ferguson fails to allege any wrongdoing by Pullium, or name him as a defendant. Even though Ferguson exhausted that particular administrative remedy, because it is not an issue in his Complaint or other filings, it is not before this Court. On the other hand, Ferguson's claim regarding his RVR conviction is stated in his Complaint, and he exhausted his administrative remedies with regard to that claim. Accordingly, the undersigned will address it more fully below.

The other four grievances, dated August 28, 2015, March 5, 2016, April 23, 2016, and April 26, 2016, each appear to relate in some manner to Defendants' alleged treatment of Ferguson following his May 2015 assault. In each grievance, Ferguson requests to be transferred to a different facility or to be placed in protective custody, and it is these grievances which appear to form the basis of Ferguson's "failure to protect" claim. However, Ferguson failed to exhaust his available administrative remedies with regard to each of these four grievances. Ferguson voluntarily withdrew his August 28, 2015, grievance. He filed the March 5, 2016, grievance outside of the 30-day window required by MDOC policy. He failed to appeal the responses he received in either the April 23 or 26, 2016, grievances. Because Ferguson failed to exhaust the available administrative remedies with regard to those four grievances, the subjects of those grievances are not properly before the Court and summary judgment is warranted. *See, e.g., Wilson*

*v. Boise,* No. 00-30803, 2001 U.S. App. LEXIS 31249, at *11 (5th Cir. Mar. 30, 2001)("Congress obviously intended that courts would enforce the exhaustion requirement strictly.").

Even if Ferguson had exhausted his available administrative remedies as they relate to his "failure to protect" claims, those claims would still fail to survive summary judgment. To establish a "failure to protect" claim under Section 1983, a plaintiff must show "that he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection." *Ard v. Rushing*, 597 F. App'x 213, 219 (5th Cir. 2014)(citing *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995)). A plaintiff must also demonstrate actual physical harm resulting from the alleged improper conduct by prison officials. *See* 42 U.S.C. § 1997e(e)(stating, "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury. . . ."); *see also Walzier v. McMullen,* 333 F. App'x 848, 851 (5th Cir. 2009)("Absent a showing that other inmates harmed [the plaintiff], there is no factual basis for a failure to protect claim."). Ferguson fails to allege, much less demonstrate in a manner which would survive summary judgment, any physical harm that he suffered as a result of Defendants' alleged conduct after the May 2015 assault.

With regard to Ferguson's complaints regarding his RVR conviction, Ferguson cannot establish a cognizable claim under 42 U.S.C. § 1983. Plaintiff alleges that his RVR conviction resulted in him being reassigned to administrative segregation for approximately six weeks and subjected to custody reclassification. An inmate "has no protected liberty interest in his security classification, and has no constitutional right to facility privileges." *Skinner v. Bufkin*, No. 2:08cv143-MTP, 2009 U.S. Dist. LEXIS 71520, at *11 (S.D. Miss. Aug. 13, 2009)(citing

*Wilkerson v. Stalder*, 329 F.3d 431, 435-36 (5th Cir. 2003)). "The classification of the Plaintiff in a certain level of custody is not an 'atypical and significant hardship' of prison life. The United States Court of Appeals for the Fifth Circuit . . . has held that 'administrative segregation, without more, simply does not constitute a deprivation of a constitutionally cognizable liberty interest.'" *McGowan v. Peel*, No. 3:06-cv-659-DPJ-JCS, 2007 U.S. Dist. LEXIS 16361, at *5 (S.D. Miss. Mar. 6, 2007)(citing *Pichardo v. Kinker*, 73 F.3d 612, 613 (5th Cir. 1996)). Besides his complaints regarding being placed in administrative segregation and being subjected to custody reclassification, Plaintiff alleges no factual occurrence relating to his RVR conviction which could form the basis of a § 1983 claim. Accordingly, summary judgment should be granted in favor of the EMCF Defendants with regard to Ferguson's claims stemming from his RVR conviction.

Defendant Pennington moves for summary judgment based on the doctrines of sovereign and qualified immunity. A review of Ferguson's filings reveals no allegations against Pennington beyond the fact that Pennington's signature appears on some of Plaintiff's ARP correspondence. Pennington works as the director of the ARP program for MDOC, does not work as part of MDOC's Corrections Investigation Division or as part of the security division of any state or private correctional facility, and has had no contact with Ferguson other than correspondence carried out as part of the Administrative Remedy Program. [39-1]. Pennington is an employee of MDOC and the State of Mississippi. *Id.* "Sovereign immunity protects MDOC, as well as its officers and employees from monetary damages claims against them in their official capacities." *Dahl v. Fisher,* No. 1:16cv82-RHW, 2016 U.S. Dist. LEXIS 174345, at *11 (S.D. Miss. Dec. 16, 2016). The only evidence Ferguson has provided shows that Pennington's only interaction with Ferguson came about while Pennington was acting in his official capacity as an employee of

MDOC. Consequently, the doctrine of sovereign immunity bars suit by Ferguson against Pennington in his official capacity.

Ferguson also sues Pennington in his individual capacity, to which Pennington responds by asserting the defense of qualified immunity. Ferguson seems to include Pennington as a Defendant only because Ferguson is displeased with the results of the ARP process. However, inmates do not have a "federally protected liberty interest in having these grievances resolved to [their] satisfaction." *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005). As such, Plaintiff has no cognizable claim against Pennington, and Pennington is entitled to immunity on Ferguson's claim. *See, McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).

Having found that Defendants' summary judgment motions should be granted, the undersigned finds it unnecessary to address Plaintiff's motion.

## Recommendation

For the reasons stated above, the undersigned recommends that Defendants' motions for summary judgment, [31] and [39], be granted. Accordingly, the undersigned also recommends that Plaintiff's motion for summary judgment [33] be denied.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. § 636; Fed. R. Civ. P. 72(b); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Respectfully submitted, this the 10th day of August, 2017.

   /s/ F. Keith Ball
United States Magistrate Judge